362 So.2d 1250 (1978)
Mrs. E.A. HANEY
v.
DEPOSIT GUARANTY NATIONAL BANK, CENTREVILLE BRANCH.
No. 50609.
Supreme Court of Mississippi.
October 4, 1978.
*1251 Pool & Hudson, John N. Hudson, Natchez, for appellant.
Watson, Wilkerson & Walsh, Richard T. Watson, Woodville, for appellee.
Before ROBERTSON, P.J., SUGG and COFER, JJ., and ROBERTSON, Commissioner.
KENNETH B. ROBERTSON, Commissioner for the Court.[1]
This case is here on appeal from the Chancery Court of Wilkinson County, wherein a general demurrer was sustained to appellant's bill of complaint, following which she declined to amend, and instead, took the appeal.
Her bill of complaint alleged that appellee loaned to one Loyd Clanton a sum of money to purchase a motor vehicle; the loan was evidenced by a combination note and disclosure statement dated June 1975 exhibited to her bill of complaint and that, as security therefor, the borrower executed a security agreement on the property being purchased with the loan proceeds also exhibited to her bill of complaint, and appellant signed the note and disclosure statement, as an accommodation party, for the sole purpose of lending her name thereto, receiving no benefit therefor, having done so "relying upon the bank as an experienced lender to perfect the security interest" in the collateral.
She further alleged that, thereafter, the bank delivered to the borrower both the collateral and all necessary documents to perfect the security interest, but the security was never to the date of her suit, perfected, and that the borrower defaulted under the note and that, while writing several demand letters to the borrower, appellee initiated no action to recover the collateral and prevent further depreciation in its value. As a result of appellee's failure to recover the security promptly, and its further failure to acquire a valid security interest appellee "unjustifiably impaired the collateral," thus discharging her obligation as an accommodation party to the note.
She alleged that throughout early 1976, appellee on several occasions represented to her that, due to the borrower's default she, appellant, was obligated to pay the debt, and that it was looking to her therefor when, in fact, her obligation was discharged by appellee's unjustly impairing the collateral. On or before May 18, 1976, appellee made demand on her to pay the debt, and represented to her that she was obligated to pay it and additional interest running on the note as well as collection costs should the debt not be promptly paid. Believing these representations to be true, and that, in return for her payment, she would receive a good and valid lien on the collateral, "and in order to withdraw other funds on deposit with the bank," she was induced to pay the total amount then payable on the note and that, on doing so, appellee assigned all rights under the note and disclosure statement security agreement, and an unfiled financial statement, and as a further inducement for the payment, appellee represented to her that it would use its resources to help her locate and recover the security.
*1252 She charged that, when making the representation to her, appellee and its representatives knew that it had not perfected the security interest and, in fact, had knowledge that all documents being delivered to her were totally worthless, causing total failure of consideration for her liquidating the debt; that, after her payment of the debt, she first realized that the papers in her possession were worthless, and that her payment was made under the mistaken belief that the security interest she was receiving was good, valid and perfected. Therefore, she alleged due to appellee's failure to perfect the security interest, she paid the monies to appellee under the mistaken fact that the sum paid was necessary for the discharge of an obligation, when the said obligation had been discharged.
She notified appellee of the mistake and demanded reimbursement of the amount she had paid to it, which request was denied and appellee continues to refuse to make such refund.
She prayed for money decree against appellee for the amount she paid plus interest and costs.
The combination note and disclosure statement she exhibited to her bill of complaint contains the provision "... the Bank may at its discretion surrender any collateral without affecting the liability of any obligor."
Appellee assigned absence of equity on the face of the bill as ground of its general demurrer. We affirm the lower court.
At the threshold of the case lies the well-known legal principle that, where there is a conflict between the allegations of a pleading and an exhibit thereto the content of the exhibit governs, when, as in this case, the exhibit is the basis upon which relief is prayed. Robinson v. Martel Enterprises, Inc., 337 So.2d 698, 704 (Miss. 1976).
Mississippi Code Annotated, section 75-3-606(1)(b) (1972) provides:
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder ...
(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. (Emphasis added).
While relying on Section 75-3-606(1)(b) appellant overlooks (1) the unjustifiable impairment of collateral must be without the consent of the party claiming discharge thereon, and (2) the very instrument on which she became a party has her consent that appellee might surrender any collateral without affecting her liability.
We have not heretofore spoken to the particular issue, but we can only conclude that failure to perfect the security interest is one method of surrendering the collateral and that in this case, and with appellant's consent, failure to perfect the security interest did surrender the collateral.
In the Georgia case of Green v. Bank of Upson, 231 Ga. 287, 201 S.E.2d 463 (1973), suit was between appellee, holder of a note, and appellant, guarantor. There was a guaranty of payment agreement providing in part that the holder of the note there involved might, without notice, "surrender, compromise, substitute or exchange all or any part of the collateral ..." The Supreme Court stated that "the question here is whether the bank's failure to file a financing statement impaired the collateral so as to discharge the appellant who was an endorser and guarantor of the obligation," and answered the question saying, "We hold that under the agreements here the appellant consented to the impairment of the collateral and can not now complain."
In the decision, the Court cited Etelson v. Suburban Trust Co., 263 Md. 376, 379, 283 A.2d 408, 410 (1971). In the Etelson case, it was held:
Etelsons by agreeing to the broad language of the endorsement limited the protection to which they might have otherwise been entitled under the UCC. It is clear from the express wording of the endorsement that the Bank could have released the collateral at any time without notice to the Etelsons and without *1253 the release affecting the Etelson's obligation to pay. It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement, it could have released the collateral with impunity. (283 A.2d at 410).
The demurrer was properly sustained.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.